U.S. DISTRICT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAY 1 4 2014

CLERK, U.S. DISTRICT COURT

By_____
                    Deputy

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| CAROLYN A. HORNE, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-397-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY ADMINSTRATION, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Carolyn A. Horne ("Horne") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under

Title XVI of the Social Security Act ("SSA"). According to the ALJ, Horne protectively applied

for DIB benefits on July 2, 2010 and SSI benefits on October 7, 2010, alleging that her disability

commenced on June 23, 2010. (Transcript ("Tr.") 14; *see* Tr. 128-44.) After both applications were

denied initially and on reconsideration, Horne requested a hearing before an administrative law

judge ("ALJ"). (Tr. 14; *see* Tr. 56-60, 68-75.) The ALJ held a hearing on December 7, 2011. (Tr.

14; *see* Tr. 30-48.) Thereafter, on January 13, 2012, the ALJ issued a decision that Horne was not

disabled. (Tr. 11-29.) On January 18, 2013, the Appeals Council denied King's request for review,

leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-8.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are

governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory

provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability

insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and

regulations, "[t]he law and regulations governing the determination of disability are the same for

both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994).

The SSA defines a disability as a medically determinable physical or mental impairment

lasting at least twelve months that prevents the claimant from engaging in substantial gainful

activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-

step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be

presently working at any substantial gainful activity.  Substantial gainful activity is defined as work

activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§

404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments

that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th

Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found

if the impairment or combination of impairments meets or equals an impairment listed in the Listing

of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d),

416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).  At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUE

In her brief, Horne presents one issue to the Court: Whether the ALJ erred by failing to properly consider the opinions of her treating physician, Duane Kirkdorffer, D.O. ("Dr. Kirkdorffer"). (Plaintiff's Brief ("Pl.'s Br.") at 1, 14-17.)

### IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his January 13, 2012, decision, stated that Horne had not engaged in any substantial gainful activity since June 23, 2010, the alleged onset date of Horne's disability. (Tr. 16.)  The ALJ further found that Horne had the following severe impairments: obesity, lumbar degenerative disc disease, and right knee osteoarthritis. *Id.*  The ALJ also held that none of Horne's impairments or combination of impairments met or equaled the severity of any impairment in the Listing.  (Tr. 18.)  As to Horne's physical RFC, the ALJ stated:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she requires the freedom to occasionally change position from sitting to standing.  The claimant retained the ability to perform said residual functional capacity for a sustained basis; i.e., for a 40-hour workweek, for an indefinite period of time. . . .

(*Id.*; *see* Tr. 18-21.)  The ALJ opined, based on his RFC assessment, that Horne was able to perform her past relevant work as a customer service representative.  (Tr. 22.)  Consequently, the ALJ found that Horne was not disabled.  (Tr. 23.)

### V.   DISCUSSION

Horne's claim is, in essence, that the ALJ erred in failing to properly evaluate the opinions of her treating physician, Dr. Kirkdorffer, or explain his reasoning for disregarding such opinions. (Pl.'s Br. at 1, 14-17.)  Specifically, Horne claims that the opinions of Dr. Kirkdorffer were "largely ignored" and that the findings the ALJ made in regard to such opinions were incorrect and

4

unsupported by the record.   (Pl.'s Br. at 14.)   Further, Horne claims, the ALJ failed to give good

reasons as to why Dr. Kirkdorffer's opinions were not adopted.   (Pl.'s Br. at 16.)

RFC is what an individual can still do despite her limitations.[1]   SSR 96-8p, 1996 WL

374184, at *2 (S.S.A. July 2, 1996).   It reflects the individual's maximum remaining ability to do

sustained work activity in an ordinary work setting on a regular and continuing basis.   *Id.*; *see*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).   A regular and continuing basis is an eight-hour

day, five days a week, or an equivalent schedule.   SSR 96-8p, 1996 WL 374184, at *2.   RFC is not

the least an individual can do but the most.   *Id.*   The RFC is a function-by-function assessment, with

both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant

evidence in the case record.   *Id.* at *3–5.   The responsibility for determining a claimant's RFC lies

with the ALJ.   *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).   The ALJ must discuss

the claimant's ability to perform sustained work activity on a regular and continuing basis and

resolve any inconsistencies in the evidence.   SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the

extent to which these symptoms can be reasonably accepted as consistent with objective medical

evidence and other evidence.   The ALJ must also consider limitations and restrictions imposed by

all of an individual's impairments, even impairments that are not severe.   *See* 20 C.F.R.

§§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.

The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.   *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).   The Commissioner assesses the RFC before proceeding from step three to step four.   *Id.*

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."   SSR 96-8p, 1996 WL 374184, at *5.   Each function must be considered separately, but the final RFC assessment may combine activities.   *Id.*   Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.   *Id.* at *6.

the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

Furthermore, SSR 96-8p, which relates to assessing a claimant's RFC, states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .
>
> . . . .
>
> . . . The RFC assessment must also consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

In addition, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the

6

effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d)*; see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

On February 15, 2008, Horne injured her right shoulder, right knee, and lower back at work. (Tr. 485.)  Horne began seeing Dr. Kirkdorffer on February 21, 2008 for treatment for her injuries. (Tr. 483.)  On August 19, 2009, Dr. Kirkdorffer prescribed an adjustable, cushioned chair with full lumbar support for Horne.  (Tr. 488, 787.)  In the prescription, Dr. Kirkdorffer also stated, "We need an ergonomic specialist to maximize her body position for good posture and support." (*Id.*)  In a Duty Status Report dated December 14, 2009, Dr. Kirkdorffer opined that Horne would be able to return to work on January 4, 2010.  (Tr. 775.)  In this report, Dr. Kirkdorffer provided, *inter alia*, that Horne needed a prescription chair for continuous sitting, and was limited to: (a) working part-time for four hours a day for five days a week, (b) sitting intermittently for four hours a day, (c) standing intermittently for a half hour a day, (d) walking intermittently for an hour a day, and (e) lifting intermittently no more than six pounds.  (*Id.*)  In a subsequent Duty Status Report dated February 17, 2010, Dr. Kirkdorffer decreased Horne's ability to work part-time from five days a week to four, noting that she must have an ergonomic evaluation of her work station and needed an orthopedic chair.  (Tr. 771.)  Dr. Kirkdorffer further opined that Horne was limited to (1) lifting or carrying intermittently up to five pounds for four hours a day; (2) sitting intermittently up to four hours a day; (3) standing intermittently one half hour a day; (4) walking intermittently up to one hour per day; (5) bending or stooping intermittently up to one hour per day, and (6) simple grasping and fine manipulation intermittently up to four hours per day.  (*Id.*)

In addition, in a letter dated May 12, 2010, Dr. Kirkdorffer stated: "Our main contention that keeps the patient from being able to work 8 hours per day is that she needs a special orthopedic

chair for her workspace." (Tr. 336.) In this letter, Dr. Kirkdorffer explained that, without the use of an orthopedic chair, "[Horne] cannot work more than 4 hours per day." (*Id.*) He further noted that Horne had tried to work five days per week "but was having too much pain to tolerate that." (Tr. 336.) In a Duty Status Report also dated May 12, 2010, Dr. Kirkdorffer opined that Horne could only lift seven and a half pounds intermittently for four hours per day, sit intermittently for four hours per day, and stand and walk intermittently for one hour per day. (Tr. 489.) He further stated that Horne could "accept new job offer only when the orthopedic chair arrives for her daily use." (*Id.*)

In another letter dated May 21, 2010, Dr. Kirkdorffer reiterated the importance of obtaining an orthopedic chair before Horne could return to "full duty work." (Tr. 338.) Dr. Kirdorffer also addressed the opinion of consultative examiner Benzel MacMaster, M.D. ("Dr. MacMaster"), who had opined that Horne could return full-time to her job with the IRS. (Tr. 338, 751; *see* Tr. 539-48, 749-50, 760-61, 763-68.) As to Dr. MacMaster's opinion, Dr. Kirkdorffer stated that he did not believe that Dr. MacMaster had the November 11, 2010 MRI report of Horne's lumbar spine when Dr. MacMaster made his evaluation and that his report mentioned "nothing about the chair that she uses at work that has poor support and actually bad positioning of her upper body." (Tr. 338, 751.) Dr. Kirkdorffer further stated, "Please do all you can to expedite the arrival of her orthopedic chair. At that time, then we will re-evaluate her pain control and hopefully get her back to full duty work soon." (Tr. 338.)

In this case, as noted above, the ALJ found that Horne had the RFC to perform sedentary work, except she required the freedom to occasionally change position from sitting to standing. (Tr. 18.) As to Dr. Kirkdorffer's treatment of Horne, the ALJ, *inter alia*, stated:

8

In July 2010 the claimant saw Duane Kirkdorfer[3], D.O., and reported neck, low back, right shoulder, and right knee pain. Dr. Kirkdorfer observed L4-5 tenderness to palpation, decreased cervical and lumbar range of motion, and negative seated straight leg raising test. The claimant was taking ibuprofen, Flexeril, and Norco. Dr. Kirdorfer referred the claimant to a chiropractor for her back and neck pain. In October 2010 Dr. Kirkdorfer observed good strength and sensation to the claimant's upper and lower extremities, good right shoulder passive range of motion, and no right shoulder tenderness.

. . . .

The claimant's allegations concerning her level of pain, subjective complaints, and functional limitations are not entirely credible or reasonably supported by the findings of the objective medical evidence or the inferences there from. The claimant alleges that she injured her right shoulder, right knee, back, and neck in a 2008 fall. The medical record shows that right shoulder arthroscopy and rotator cuff repair was successful and the claimant had full right shoulder range of motion by November 2009. The claimant alleges right arm numbness and weakness, but Dr. Kirkdorfer observed good strength and sensation in the claimant's right arm.

. . . .

Although some physical limitations are consistent with the claimant's severe impairments, the medical record supports a conclusion that the claimant can perform sedentary work with the freedom to occasionally change position. Dr. Kirkdorfer released the claimant to work with only a need for an ergonomic chair and workstation; he did not limit her sitting to 3-4 hours in an 8-hour workday. I find that the claimant's allegations regarding her limited ability to stand and walk and her need to change position throughout the day are quite credible and consistent with the above residual functional capacity. There is no evidence that the claimant is unable to perform the sitting requirements of sedentary work if allowed to change position occasionally.

(Tr. 20-21 (internal citations omitted) (footnote added).) In addition, the ALJ stated:

As for the claimant's right knee and back, there is radiographic evidence of osteoarthritis in the right knee and degenerative disc disease in the lumbar spine, but these findings and the clinical findings in the record do not support the degree of pain and limitation the claimant alleges. The claimant has attended relatively infrequent appointments with a specialist since the alleged onset date and she did not report her allegedly disabling pain during her more frequent appointments with her primary care source. Since the alleged onset date, she has received only routine and conservative treatment for these impairments. She testified that she occasionally

---

[3] The Court notes that the ALJ spelled Dr. Kirkdorffer's name as "Kirkdorfer" in his decision. However, a review of the documents in the record indicates that the correct spelling is "Kirkdorffer." (*See, e.g.*, Tr. 488.)

uses a cane, but there is no evidence an assistive device has been prescribed and a treating or examining source has not observed use of a cane.

. . . .

The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Although the claimant testified that she does very few daily activities, she previously reported that she loads the dishwasher, does laundry, prepares meals, grocery shops, goes to church and to the post office and pharmacy, goes out to eat, and spends time with her boyfriend and people who come to visit her. The claimant testified that she occasionally notarizes paperwork, but in July 2011 she told her primary care physician that she was doing consulting and notary work and several months later she told Hopper Group staff that she was working the night shift helping others complete paperwork. She went to Hawaii in mid-2011.

. . . .

As far as the opinion evidence, I have given some weight to the State agency medical opinions regarding the claimant's residual functional capacity insofar as they are consistent with a finding that the claimant is not disabled. Although the residual functional capacity set forth above is somewhat different from the State agency opinions, this is appropriate in light of the claimant's testimony and the updated medical evidence, which supports a residual functional capacity for sedentary work with the freedom to occasionally change position.

In sum, the above residual functional capacity assessment is supported by the record as a whole. I find that the objective evidence fails to establish that the claimant has any significant restrictions that would prevent her from performing work consistent with the above residual functional capacity, despite her subjective complaints. In so finding, I have afforded the claimant the benefit of every doubt with respect to her complaints of chronic pain and physical limitations, and I have thus limited her to sedentary work with the freedom to occasionally change position from sitting to standing. The evidence fails to support a conclusion that the claimant has any additional functional limitations as a result of her medically determinable impairments.

(Tr. 20-22.)

In addition, the ALJ, in making his physical RFC determination, reviewed, *inter alia*, the following evidence in the record: (1) Horne's testimony that, *inter alia*, in an eight-hour day she can sit for 3-4 hours and stand or walk for two hours (Tr. 19; *see* Tr. 40); (2) evidence that Horne injured her right shoulder in February 2008 and underwent right shoulder arthroscopy and rotator

cuff repair in January 2009 (Tr. 17; *see* Tr. 263-67); (3) evidence that in 2008 Horne also underwent right knee arthroscopy (Tr. 19; *see* Tr. 572); (4) a November 2008 lumbar MRI showing desiccation changes of the L4-5 and L5-S1 discs, mild annular bulge of the L5-S1 disc without focal protrusion, minimal bulge of the L4-5 disc, and degenerative facet changes at L5-S1  (Tr. 20; *see* Tr. 585-86.); (5) treatment records dated November 2009 showing that Horne had full internal and external rotation and excellent overhead reach, although she had some discomfort reaching behind her back (Tr. 17); (6) treatment records dated October 2010 showing that Horne had "good right shoulder strength and passive range of motion and no shoulder tenderness" (Tr. 17); (7) July 2010 cervical and lumbar spine x-rays showing no evidence of acute bony injury, possible grade I spondylolisthesis of L5, and moderate facet arthrosis at L5-S1 (Tr. 20; *see* Tr. 356); and (8) a Physical Residual Functional Capacity Assessment dated December 13, 2010 in which State Agency Medical Consultant Kelvin Samaratunga ("SAMC Samaratunga") opined that Horne: (a) could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, (b) could sit, stand, and/or walk for a total of about eight hours in an eight-hour workday; and (c) had the unlimited ability to push and/or pull (other than as shown for lift and/or carry) (Tr. 22; *see* Tr. 730-35).

Contrary to Horne's claims, the ALJ did not explicitly reject all of Dr. Kirkdorffer's opinions.  While the ALJ's analysis could have been clearer, a careful reading of the ALJ's decision and the evidence of record indicates that the ALJ's discussion of Dr. Kirkdorffer's opinions were not necessarily incorrect, as claimed by Horne.  Instead, it appears that the ALJ was comparing Dr. Kirkdorffer's findings to Horne's claims that she was limited to sitting three to four hours in an eight-hour workday.  (Cf. Tr. 19 (stating that Horne testified at hearing that "[i]n an eight-hour day, she can sit for 3-4 hours") *with* Tr. 21 (stating that Dr. Kirkdorffer "did not limit her sitting to 3-4

hours in an 8-hour workday").)  While Dr. Kirkdorffer did, in the Duty Status Reports, limit Horne to working part-time and sitting intermittently for four hours a day, such limitations appear to be based on the fact that Horne's employer had not obtained an ergonomic chair.  A careful reading of Dr. Kirkdorffer's letters indicates that Dr. Kirkdorffer believed that Horne would most likely be able to work eight hours a day with the special ergonomic chair.  (*See*, *e.g.*, Tr. 336-39.)   It appears that the ALJ provided for some of the opinions of Dr. Kirkdorffer in limiting Horne to not only sedentary work, but also providing her with the ability to occasionally shift positions from sitting to standing. (Tr. 18.)

While the ALJ did not adopt Dr. Kirkdorffer's opinion that Horne must have an ergonomic chair, there is substantial evidence in the record that supports the ALJ's RFC and disability determination.   (Tr. 14.)   The ALJ properly discussed the evidence of record in making his disability determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his residual functional capacity assessment that were most supported by the record.  *See,* e.g., *Muse*, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

Furthermore, because substantial evidence supports the ALJ's RFC determination, any error relating to the failure of the ALJ to properly analyze Dr. Kirkdorffer's opinions would be harmless error.   *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *72 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating

physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).  Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 28, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the

opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 14, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE